### ARNOLD v. THOMPSON & SPEAR CO., Inc.

(Court of Appeals of District of Columbia. Submitted November 8, 1922. Decided March 6, 1922.)

No. 3493.

1. **Contracts** ⊙⟞286—**Testimony of contractor incompetent to establish right to final payment due after acceptance.**

Where a subcontract for the installation of plumbing in a building under construction provided that 10 per cent. of the contract price should be retained until after the acceptance of the work, testimony by an officer of the subcontractor that it had performed its contract is incompetent to entitle the subcontractor to recover the entire contract price, though it would support recovery for all except the final payment.

2. **Evidence** ⊙⟞314(1)—**Cross-examination of contractor's president held to show testimony as to full performance was hearsay.**

Where the president of the corporate subcontractor had testified to full performance of the subcontract, his statement on cross-examination that

he had not seen the work since a date at which no work had been done shows that his testimony of performance was merely hearsay, notwithstanding testimony by another witness that the president was in the city where the work was done some time after work was commenced under the subcontract.

**3. Evidence ⬦338—Copy of letter not certified is inadmissible as copy of files of Bureau of Yards and Docks.**

The copy of a letter on the letter head of the Bureau of Yards and Docks, and signed by one designating himself as assistant to the bureau, was not competent as a copy of the files of the bureau, where it was not certified as required by statute.

**4. Evidence ⬦378(1)—Copy of letter sent to plaintiff inadmissible without previous foundation.**

A copy of a letter addressed to plaintiff is not admissible against him, on the presumption he possessed the original, where no proper foundation for its admission had been laid.

**5. United States ⬦73—Letter from Bureau of Yards and Docks held not acceptance of subcontractor's work.**

A copy of a letter written by an officer of the Bureau of Yards and Docks, which was required by a subcontract to accept the work, which letter declared the work would be treated as completed for the purpose of the damage clause of the contract, and did not pretend to be an acceptance by the bureau, was incompetent to prove acceptance.

**6. Evidence ⬦378(3)—Designation of writer of letter as assistant to Bureau of Yards and Docks does not establish his authority to speak for bureau.**

The fact that the writer of a letter designated himself as assistant to the Bureau of Yards and Docks does not establish his authority to speak for the bureau, so as to make a copy of the letter admissible.

**7. United States ⬦73—Papers produced from Bureau of Yards and Docks held not acceptance of subcontractor's work.**

Certified copies of papers on file with the Bureau of Yards and Docks, some of which related only to additional work performed under the contract, and others consisted of declarations by individuals on different subjects, but none of which dealt with the completion of the entire work, or purported to be an acceptance thereof, are not competent to establish acceptance by the Bureau of Yards and Docks, which was a condition precedent to final payment to a subcontractor.

**8. United States ⬦73—Mode of proving performance fixed by contract must be followed, unless impossible.**

Where a subcontract for the plumbing work in a building provided that performance should be proved by acceptance of the work by the Bureau of Yards and Docks, the subcontractor cannot recover the contract price for the work, unless he produces the evidence of performance required by the contract, or shows that it is impossible to do so.

**9. United States ⬦73—Acceptance of work by Bureau of Yards and Docks should be proved by records of bureau.**

The acceptance of work by the Bureau of Yards and Docks, as required by a subcontract for the plumbing, should be proved by the records of the bureau, which should show the acceptance, if there has been one, and the contractor cannot recover the final payment, without proving such acceptance.

Appeal from the Supreme Court of the District of Columbia.

Action by the Thompson & Spear Company, Inc., against R. H. Arnold, trading as the R. H. Arnold Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded, with instructions to grant a new trial.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E. P. Morey and William H. White, both of Washington, D. C., for appellant.

Ernest W. Roberts, of Washington, D. C., for appellee.

SMYTH, Chief Justice. Thompson & Spear Company, Inc., hereinafter designated as the corporation, sued Arnold for a balance of $3,115.42, claimed to be due for certain work done by the corporation as a subcontractor under Arnold. The case was tried to a jury, which returned a verdict for the entire amount claimed. Judgment was entered on the verdict, and Arnold appeals.

Arnold had a contract with the United States government for the construction of a general storehouse at the submarine base near New London, Conn. He entered into a subcontract with the corporation to do the plumbing and related work for $3,800, which was to be paid as follows:

"On the 1st of each month as the work progresses * * * 90 per cent. of the value of the completed work as based on the above contract price, and the remaining 10 per cent. 30 days after the completion of this subcontract and acceptance of the same by the above-named owner or architect."

The Navy Department was named as owner, and the Bureau of Yards and Docks as architect. It was also provided that, should Arnold at any time during the progress of the work direct any additions to or omissions from the work, the corporation should do it in the manner directed. If work was omitted, it was to be deducted from the contract price; if added, to be added to that price. Work was added, which the corporation claims was worth $1,088.92, while Arnold says it was worth only $1,025.60. The corporation alleges that it performed all the work required of it with due diligence, and that the total amount of the contract, with the additions, was $4,888.92; that it received $1,773.50 from Arnold, but that he refused to pay the balance, namely, $3,115.42.

Arnold filed several pleas. He denied that he was indebted to the corporation, and alleged that by reason of its failure to complete the contract according to its terms he was damaged in the sum of $694.66, for which he asked judgment. Arnold offered no evidence in support of his claim for damages, and therefore it went out of the case. The ultimate question, then, is as to whether or not the corporation proved performance.

Errors are assigned by Arnold with respect to the admission of evidence, the refusal of the court to peremptorily instruct the jury to return a verdict for him, its refusal of certain other prayers for instructions, and with respect to parts of the charge to the jury.

[1] For the purpose of proving performance, Mr. Thompson, president of the corporation, was asked whether the corporation had furnished the materials and labor called for under the contract and the order for additional work. This was objected to on the ground, among others, that according to the contract the officials of the Navy Department were to determine that matter. The objection was overruled, and an exception taken. The question was answered in the affirmative.

As we have seen, the contract provided that the final sum was not

payable until 30 days after the completion of the contract and the acceptance of the work by the Navy Department or the Bureau of Yards and Docks. The corporation was suing for the final and all other payments due. While the testimony of Thompson might be competent to prove that some of the 90 per cent. installments were due and unpaid, it was not competent to establish that the final payment was due. The question covered both, and therefore there was error in overruling the objection.

[2, 3] On cross-examination Mr. Thompson admitted that "after November 5, 1917, he was not down to this job personally," and said that by the word "job" he meant the work he was testifying about. The subcontract purports to have been signed October 29, a few days before, but it was not returned by the corporation to Arnold until November 5. A letter which accompanied it said:

"Please do not write back and cause any delay in starting the work. * * * The quicker you get the plans and specifications to us, the sooner we will make the layout for the plumbing and get the stock on the job."

This indicates conclusively that no work was done before November 5, and as Mr. Thompson, according to his own statement, did not see the work after that, he had no personal knowledge as to whether or not it was done. His testimony is purely hearsay.

In an effort to qualify it, the corporation produced as a witness Commander Burrell, who said that he first met Thompson in New London in the winter of 1917–18, and was quite sure he, Thompson, was there in June, 1918. But this has no tendency to show that Thompson examined the work at that time, especially in view of the latter's unqualified statement that he had not seen it after November 5, 1917.

The commander also testified that he was in the Civil Engineer Corps, under the Bureau of Yards and Docks; that he reported for duty at the submarine base in October, 1917, and continued there throughout December, 1919; that he had supervision of all construction work at the submarine base, both by contract and day labor; that he knew that the defendant Arnold had a contract to construct a storehouse there, and that the corporation was a subcontractor for the plumbing work on the house; that he had supervision of the preparation of all reports relating to the work, and the preparation of vouchers in payment therefor. He said that the corporation furnished the labor and material, and installed the plumbing work "in the regular contract and in the extra," and that it was satisfactory, without saying to whom it was satisfactory. He was then asked if the work was accepted. This was objected to on the ground that the acceptance could be made only by the Bureau of Yards and Docks; that if it had been made the acceptance was a matter of record, and could be proved only by the record. The court ruled that the record should be produced.

[4] Through the witness, the corporation offered a carbon copy of a letter purporting to have been written to Arnold by R. E. Bakenhus, who described himself as "Assistant to Bureau." It is written on a letter head of the Bureau of Yards and Docks. The witness said that the original was in the files of the submarine base at New London. Over the objection of Arnold it was received. Clearly it was not com-

petent as a copy of the files of the Bureau of Yards and Docks, because not certified as required by the statute. If treated as a copy of a letter sent to Arnold, who, presumably, possessed the original, it was not admissible, since there was no proper foundation laid.

[5, 6] There are other reasons why it should not have been received. It does not purport to be an acceptance of the work. It declares that the work would be treated as completed "for the purpose of the damage clause of the contract." This limits its effect. Nor does it pretend to be an acceptance, even for that purpose, by the Bureau of Yards and Docks or by the Navy Department. There is no proof that Bakenhus had authority to act for the bureau or the department. The mere fact that he describes himself as "Assistant to Bureau" does not establish his authority to speak for it.

[7] A number of papers, duly certified to be correct copies of papers on file with the Bureau of Yards and Docks, were offered and received in evidence over the objection of Arnold. None purports to be a record of the bureau's action in any particular. One is a decision of a board of officers designated to "consider the additional work which had been authorized on the above contract, and the estimates thereon which have been prepared," etc., and does not relate in any way to the work required by the original contract—the contract as it existed before the additional work was ordered. The other papers consist of declarations by individuals upon different subjects. Five of them relate to what the board did concerning the additional work. None deals with the completion of the entire work. Even if these papers dealt with all the work, they do not purport to be an acceptance of it by the Navy Department or the bureau. Hence they were not competent to establish performance in the manner required by the contract.

[8] No doubt Commander Burrell had sufficient knowledge to enable him to speak as to the performance of the work, if that was the proper way to establish its performance; but it was not. The contract provided another way, and that should have been followed. The Supreme Court of the United States said a long time ago that:

"Where the parties, in their contract, fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part, which could be done, to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so." United States v. Robeson, 9 Pet. 319, 326, 9 L. Ed. 142.

Cases supporting the same view of the law are Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; George A. Fuller Co. v. B. P. Young Co., 126 Fed. 343, 61 C. C. A. 245; Bush v. Jones, 144 Fed. 942, 75 C. C. A. 582, 6 L. R. A. (N. S.) 774. There is no claim here that the corporation was prevented by time or accident from producing the necessary evidence.

[9] If the work in question has been accepted by the Navy Department or by the Bureau of Yards and Docks, as the contract requires, there should be a record of it, and there should be no difficulty in proving that record by competent evidence. It has not been proven in this

case, and therefore the court erred in not sustaining the motion to peremptorily instruct the jury to return a verdict for Arnold. ·

For this reason, the judgment is reversed, with costs, and the case remanded, with instructions to grant a new trial.

Reversed.