312

Paul Windels, Corp. Counsel, of New York City (P. Fearson Shortridge and John T. Condon, both of New York City, of counsel), for appellant city of New York.

Cravath, De Gersdorff, Swaine & Wood, of New York City (Joseph Day Lee, of New York City, of counsel), for respondents impleaded appellees William J. Brown and John J. McGuire, as trustees of E. O. Roberts Co., Inc., McClintic-Marshall Corporation, and J. Livingston & Co.

Nevius, Brett & Kellogg, of New York City (Robert B. Jarvis and John R. Stewart, both of New York City, of counsel), for respondent impleaded appellee Senior & Palmer, Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On July 16, 1931, the city of New York made a contract with E. O. Roberts Company, Inc., to construct a drawbridge over English Kills at Metropolitan avenue, Brooklyn. After partial performance, the contractor assigned the contract on June 20, 1932, pursuant to section 27 of the New York Lien Law (Consol. Laws, c. 33), to William J. Brown and John J. McGuire, as trustees. The latter, by contract of August 4, 1932, engaged Senior & Palmer, Inc., to complete the work. Senior & Palmer made a contract with McClintic-Marshall Corporation to perform some of the work, including the laying of the cables to furnish power for the operation of the drawbridge. On August 27, 1931, McClintic-Marshall entered into a contract with J. Livingston & Co. to perform the electric work on the bridge, which included the laying of the cables in a trench below the bed of the river. J. Livingston & Co., however, did not lay the cables in the way required by the permit issued by the United States Army engineers or the contract with the city. Instead of submerging them below the bed of the river in the trench as prescribed, they laid them only in part in the trench, which was insufficient, because of their length, to contain them, and coiled the slack at each end in the bottom of the stream near the points where the cables were inserted in the cable chasers on the piers of the bridge itself. The libelant's steam tug Wonder went to the bulkhead just north of the west pier to obtain fresh water from a hydrant located there, and, while backing in, picked up one of the cables in her propeller and suffered the damages for which this suit was brought. The coils of cable lay on the bed of the river only about 7 feet instead of 18.8 feet below mean low water as required by the permit of the War Department and the contract with the city of New York. The owner of the tug Wonder filed the libel against the city on the ground that the latter had improperly maintained the cables in such a way as to constitute an obstruction and danger to navigation and gave no previous notice or warning to libelant, and especially on the ground that the cables were not placed below the bed of the stream as required by law. The city impleaded Brown and McGuire as trustees for E. O. Roberts Co., Inc. Brown and McGuire impleaded Senior & Palmer, Inc., who had taken an assignment of the construction contract and had assumed responsibility for the proper execution of the work. Senior & Palmer impleaded their subcontractor, McClintic-Marshall Corporation, and the latter in turn impleaded their subcontractor, J. Livingston & Co.

The original contract between the city and E. O. Roberts Company, Inc.,

provided that the contractor "should be responsible for all injuries to persons or damage to property either directly or indirectly that may result from his operations for which otherwise the City of New York might be liable." The trial court held the city solely liable, and properly refused to enforce the contract to save the latter harmless for the reason that the obligation was not maritime and therefore did not come within the jurisdiction of a court of admiralty. In respect to liability in tort, it held that the contractor and subcontractors were not engaged in work on the submarine cables at the time of the accident, and, because their work had been completed some five months before, were free from liability of any kind. This conclusion was unfounded. Philadelphia, W. & B. R. Co. v. Philadelphia & H. de G. Steam Towboat Co., 23 How. 209, 16 L. Ed. 433; Huntley v. Empire Engineering Corporation, 211 F. 959 (C. C. A. 2); Blanchard v. Western Union Tel. Co., 60 N. Y. 510.

■ The city of New York apparently does not question its responsibility to the owner of the tug, but contends that its liability is only secondary, and that it is entitled to full indemnity from J. Livingston & Co. because the latter improperly installed the cable. The intervening contractors and subcontractors, other than J. Livingston & Co., were not liable in tort. So far as the record shows, they neither installed, nor directed the installation of, the cable in an improper manner, and J. Livingston & Co. and the city of New York only were actors in the matter. City of New York v. Corn, 133 App. Div. 1, 5, 117 N. Y. S. 514.

■ The chief engineer of the city was apparently aware of the fact that the ends of the cables were not placed in the trench but were coiled above the bed of the stream in a way to be dangerous to vessels such as libelant's tug which were approaching the bridge for the purpose of obtaining fresh water. There is no adequate proof, however, that he directed such a method of installation, though he admitted that he reported the location of the cables to the city authorities after they were put down. As late as September 14, 1932, the deputy commissioner of plant and structures of the city wrote Senior & Palmer, Inc., that the government permit covered "the laying of the * * * submarine cables in a trench, * * *" and said: "Whatever

slack there may be in these cables should be laid in the trench and not cut off." Because the city knew, through its engineers, that the cables were not laid in the trench but were in part coiled above the river bottom, the case is not like those where an installation dangerous to the public has been unlawfully made by a contractor without the knowledge of a municipality. Washington Gaslight Co. v. District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712. On the contrary, it is one where the contractor with full knowledge of the requirements of the government permit coiled the ends of the cables above the bed of the river and near enough to the surface to be a danger to vessels lawfully navigating, and the city was aware of the fact.

It is true that the city, after knowing of the dangerous and unlawful installation, might have posted notices which perhaps would have warned vessels of the danger. But the contractor could have done the same thing, or at least could have taken steps to have the city do it. Each party was in a position to see that the cable was safely and lawfully installed, and failed to do so. In such circumstances, we hold that the city of New York and J. Livingston & Co. were joint tort-feasors. Trustees of Village of Geneva v. Brush Electric Co., 50 Hun, 581, 3 N. Y. S. 595.

It may be contended that the city authorized the unlawful installation of the cables and hence is not in a position to enforce contribution. There was testimony by Palmer of Senior & Palmer that Hawley, one of the city engineers, said that the city did not want any extra dredging done, though Hawley denied such a conversation. There was also testimony that the trench would not hold such long cables. Palmer also testified that the extra length was to be divided between the east and west ends of the span and lie "coiled around the bottom." Carlisle, the superintendent of J. Livingston & Co., likewise said that Joachinson, another city engineer, told him that the excess length of cable was to "be disposed equally on each side of the channel," and that it was his understanding that it was to be laid on the bottom. But Joachinson testified that he had no discussion with Carlisle about the path of the cables or gave any such directions as the story of the latter indicated.

Such testimony is entirely insufficient to prove authorization by the city of an installation illegal in itself, because contrary

to the terms of the government permit and in conflict with the written contract between the parties and the specific notice in the letter of the deputy commissioner on September 14, 1932, that whatever slack there might be in the cables "should be laid in the trench. * * *" It is unthinkable that city engineers would have the power to modify a municipal contract in such a vital respect as is claimed by the subcontractor, and proof that they attempted to do so is lacking. Section FF of the contract provided that "The action of the Commissioner, by which the contractor is to be bound and concluded according to the terms of this contract, shall be that evidenced by his final certificate. * * *" The contractor obtained no such certificate. Arnold v. Thompson & Spear Co., 51 App. D. C. 325, 279 F. 307.

The contractor here did not comply with its contract. Hence the case differs radically from such decisions as Ryan v. Feeney & Sheehan Building Co., 239 N. Y. 43, 145 N. E. 321, 41 A. L. R. 1.

Under the admiralty rule governing the situation the city is entitled to contribution from the contractor, and the decree should be modified by providing that it recover from the latter one-half of the damages which may be established against it. As thus modified, the interlocutory decree is affirmed.