JOSEPH CARDINAL, Doing Business under the Name of CARDINAL ENGINEERING COMPANY, Appellant and Respondent, *v.* STATE OF NEW YORK, Respondent and Appellant.   (Claim No. 28951.)

Argued April 22, 1952; decided July 15, 1952.

*Thomas A. McDonald, James S. Tobin* and *Edward C. McDonald* for appellant and respondent. I. The Appellate Division erred in ruling that a quasi-contractual duty of indemnification is excluded from coverage as an obligation " assumed by contract " as opposed to one " imposed by law ". (*Slattery v. Marra Bros.*, 186 F. 2d 134; *Schwartz v. Merola Bros. Constr. Corp.*, 263 App. Div. 631, 290 N. Y. 145; *Gallant v. Waterman S. S. Corp.*, 90 F. Supp. 495; *City of New York v. Davis*, 7 F. 2d 566.) II. The protection provided by the Legislature to an employer, who secures the payment of compensation to his employees by contributing premiums to the State Insurance Fund against liability arising from injuries to his employees, is absolute. (*Matter of Post v. Burger & Gohlke*, 216 N. Y. 544; *People ex rel. Mutual Life Ins. Co. v. Board of Supervisors of City of N. Y.*, 16 N. Y. 424; *Matter of Chatlos v. McGoldrick*, 302 N. Y. 380; *Claridge Apts. Co. v. Commissioner of Internal Revenue*, 138 F. 2d 962; *People ex rel. Steckler v. Warden of City Prison*, 259 N. Y. 430; *Great Northern Ry. Co. v. U. S.*, 315 U. S. 262; *People v. Weinstock*, 117 App. Div. 168; *Matter of Clonan*, 176 Misc. 557; *Quaker Oats Co. v. City of New York*, 295 N. Y. 527.) III. The undisputed proof established that recovery would have been allowed in the Admiralty Court against Cardinal for all sums which the United States was compelled to pay to the injured men. (*Employers' Liability Assur. Corp. v. Post & McCord*, 286 N. Y. 254; *Tipaldi v. Riverside Memorial Chapel*, 273 App. Div. 414; *Vanderlinden v. Lorentzen*, 139 F. 2d 995; *The Spokane*, 294 F. 242; *Westchester Lighting Co. v. Westchester Co. Small Estates Corp.*, 278 N. Y. 175; *Burris v. American Chicle Co.*, 120 F. 2d 218; *Strika v. Netherlands Ministry of Traffic*, 185 F. 2d 555.) IV. By his contract with the United States, Cardinal assumed no liability which would not have been imposed by law. (*American Stevedores v. Porello*, 330 U. S. 446; *Mostyn v. Delaware, L. & W. R. R. Co.*, 160 F. 2d 15; *Petkinic v. Eidlitz & Son*, 266 N. Y. 437; *Thompson-Starrett Co. v. Otis Elevator Co.*, 271 N. Y. 36.) V. Claimant need only show that the settlements effected by him were made in good faith. Honest errors of judgment in the conduct of a defense involuntarily thrust upon him will not deprive him of protection. (*Halcyon Lines v. Haenn Ship Corp.*, 342 U. S. 282; *American Mut. Liability Ins. Co. v. Matthews,*

182 F. 2d 322; *Green* v. *War Shipping Administration*, 66 F. Supp. 393; *Severn* v. *United States*, 69 F. Supp. 21; *Barbarino* v. *Stanhope S. S. Co.*, 151 F. 2d 553; *Brassil* v. *Maryland Cas. Co.*, 210 N. Y. 235; *St. Louis Beef Co.* v. *Casualty Co.*, 201 U. S. 173; *Carthage Stone Co.* v. *Travelers Ins. Co.*, 186 Mo. App. 318; *Berger Bros. Elec. Motors* v. *New Amsterdam Cas. Co.*, 267 App. Div. 333.) VI. There is no limitation on the coverage provided by the State Insurance Fund. (*Matter of Humphrey* v. *State Ins. Fund*, 298 N. Y. 327; *Murray* v. *Gerrick & Co.*, 291 U. S. 315; *Capetola* v. *White Co.*, 139 F. 2d 556; *Sadrakula* v. *Stewart & Co.*, 254 App. Div. 892; *Puleo* v. *Moss & Co.*, 159 F. 2d 842.) VII. The duty of the State Fund of defending Cardinal in the admiralty actions brought against him was clear. (*Nilsen* v. *American Bridge Co.*, 221 N. Y. 12; *Goldberg* v. *Lumber Mut. Cas. Ins. Co.*, 297 N. Y. 148; *Pow-Well Plumbing & Heating* v. *Merchants Mut. Cas. Co.*, 195 Misc. 251; *Christian* v. *Royal Ins. Co.*, 185 Minn. 180; *Maryland Cas. Co.* v. *Pearson*, 194 F. 2d 284; *Lee* v. *Ætna Cas. & Sur. Co.*, 178 F. 2d 750.)

*Bernard Katzen, General Attorney* (*William H. Stieglitz* and *Harry Schechter* of counsel), for State Insurance Fund, *amicus curiæ*. I. The State Fund was given legislative authority in 1928 to insure any employer's liability whether covered by the Workmen's Compensation Law or under any other law or theory of law. (*W. H. H. Chamberlin, Inc.*, v. *Andrews*, 159 Misc. 124, 271 N. Y. 1; *Westchester Lighting Co.* v. *Westchester Co. Small Estates Corp.*, 278 N. Y. 175.) II. The courts will follow the practical construction adopted by the State Insurance Fund, acquiesced in and acted upon for thirty years. (*Cardinal* v. *United States Cas. Co.*, 277 App. Div. 1140, 302 N. Y. 853.)

*Nathaniel L. Goldstein, Attorney-General* (*Henry S. Manley* and *Wendell P. Brown* of counsel), for respondent and appellant. I. Cardinal's liability to the United States, which he compromised, was assumed by his contract with the United States and so was expressly excluded from the policy. (*Halcyon Lines* v. *Haenn Ship Corp.*, 342 U. S. 282.) II. The State Fund's policy did not cover third-party liability. (*Treadwell Co.* v. *United States Fidelity & Guar. Co.*, 275 N. Y. 158.) III. The only effect of the 1951 and 1952 amendments is to authorize the

State Fund to provide third-party liability coverage after the amendments. (*Westchester Lighting Co.* v. *Westchester Co. Small Estates Corp.*, 278 N. Y. 175.)  IV. Liabilities of the State Fund are not collectible in the Court of Claims.  V. The policy restricts recovery to $25,000.  VI. The Appellate Division erred in awarding Cardinal his entire legal expenses for defending and settling a litigation which presented against him two causes of action, the first insufficient on its face and the second expressly excluded from the policy coverage.  (*Mason-Henry Press* v. *Ætna Life Ins. Co.*, 211 N. Y. 489; *Goldberg* v. *Lumber Mut. Cas. Ins. Co.*, 297 N. Y. 148; *Grand Union Co.* v. *General Accident, Fire & Life Assur. Corp.*, 254 App. Div. 274, 279 N. Y. 638.)

DESMOND, J.  This suit, being on an insurance policy issued by the State Insurance Fund (see Workmen's Compensation Law, §§ 76–99), was properly brought against the State itself, in the Court of Claims (see *Heath* v. *State of New York*, 303 N. Y. 658).  The lower courts denied recovery.  We do not agree.

The policy which the Fund issued to claimant Cardinal was in a familiar form.  By it, the Fund agreed, in broadest language, to indemnify the insured " against loss by reason of any liability imposed upon him by law for damages on account of such injuries to [his] employees ", agreeing, also, to insure claimant-insured against all liability under the New York Workmen's Compensation Law and the Federal Longshoremen's and Harbor Workers' Compensation Act, there being an express exception in the policy as to " any liability assumed by the employer under any contract entered into with any other person, association or organization."  The policy contained the usual promise by the Fund, as insurer, that it would defend " in the name and on behalf of this employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent ".  In other words, the Fund promised claimant not only that it would indemnify him against all liability to his employees under the two compensation statutes, and against any loss by reason

of any other liability imposed on him by law for injuries to his employees, but also that it would defend, in his name and behalf, any suits or proceedings brought against him " on account of such injuries," excepting only liabilities assumed by contract and not imposed by law.

On January 3, 1945, while the policy above described was in effect, claimant Cardinal, a ship repairer, was engaged in carrying out, through employees, a contract with the United States for repairs and changes to the refrigeration system of a vessel owned by the United States and lying at a berth in the Port of New York. While a large number of claimant's employees were in the hold of the vessel, ammonia gas was, accidentally, allowed to escape from the refrigeration pipes, with the result that eighteen of the employees were injured, one of them fatally. Sixteen of the injured employees, and the administratrix of the deceased employee, filed separate libels in admiralty in the United States District Courts for the Southern and Eastern Districts of New York, against the United States as owner of the ship, alleging total damages of about $555,000, the general theory of those libels being that the shipowner had failed to keep the ship in a safe and seaworthy condition, and had failed to furnish Cardinal's employees with a safe place to work. The United States, as respondent in those suits, then filed petitions to implead claimant Cardinal in each such suit. Each such impleading petition contained two alleged causes of action against Cardinal. The first of those, clearly sounding in tort, charged that Cardinal had failed to act with reasonable care, and had failed to avoid the dangerous conditions on the ship and to eliminate them, this first cause of action in the impleading petitions alleging that, if any libelant suffered any damages and was entitled to recover against the United States, the actual fault for the occurrence was that of Cardinal, and that for any such recovery by any libelant, the United States should have full indemnity, or contribution, from Cardinal. The second cause of action in the impleading petitions filed by the United States against Cardinal, called attention to a provision in the repair contract between the United States and Cardinal, by the terms of which provision Cardinal had agreed to indemnify and save harmless the United States against all suits, actions, claims, etc., by third parties arising from the fault of Cardinal

or his agent or servants. The substance of those impleading petitions, therefore, was that, as to any damages recovered by any of the libelants against the United States, the latter should have recovery over in part or in full against Cardinal, either on the ground that the actual fault was his, or because he had agreed to indemnify the United States against all claims by third parties resulting from Cardinal's own fault. The process issued by the United States courts against Cardinal, on those impleading petitions, required that Cardinal, conformably to admiralty practice, make answer to the allegations not only of the petitions, but of the original libels, also. Thus, he was required to defend against the claims of the libelants as well as against the claims over, asserted by the United States against him. At that juncture Cardinal, through his attorney, took these matters up with the State Insurance Fund, notifying them of the filing of the various pleadings, and, under date of August 6, 1946, Cardinal's attorney formally demanded that the Fund undertake the defense, for Cardinal, of all the actions. Under date of August 9, 1946, the Fund, through its general attorney (whose authority to act for the Fund in the matter is not disputed) notified Cardinal's attorney, in writing, that the Fund disclaimed and disavowed any liability or responsibility as to the " cross-claims ", as well as any liability to defend against the same. The sole asserted reason for this disclaimer by the Fund was the provision, above referred to, in the policy, excluding from its coverage " any liability assumed by the employer under any contract entered into with any other person, association or organization." In other words, the Fund denied policy coverage as to these liabilities asserted against Cardinal by the libelants and the United States, but only because the second of the two causes of action in the impleading petitions asserted that Cardinal had, by contract, assumed such liabilities. It is important to note that, aside from the matter about to be mentioned in the last sentence of this paragraph, the State Insurance Fund never disclaimed coverage, or refused to defend, on any except that one sole ground, that is, that the liability was one assumed by contract by Cardinal, and so not insured against. The other reason given by the Fund at a later time for not defending or for limiting its defense, was that it claimed, as will appear, that the extent of its liability as to these claims

was no more than a total of $25,000. It seems clear to us, however, that paragraph One (b) of the original policy provided indemnification as to all third-party liabilities on account of injuries to Cardinal's employees '' wherever such injuries may be sustained.'' There was nothing in the rider issued later, drawn by the insurer and headed '' United States Longshoremen's and Harbor Workers' Compensation Endorsement '' which sufficiently put the insured on notice that a limitation of amount as to third-party claims was being imposed. The lower court opinions in this case do not discuss that alleged limitation.

After the Fund had thus, because of the allegations as to contract assumption in one part of the impleading petitions, refused to undertake the defense of these suits for Cardinal, Cardinal's lawyer filed answers to all the libels and impleading petitions, and the cases went onto the trial calendar to await their turn. Then, after some months, and in March, 1947, there was decided by the United States Supreme Court the case of *American Stevedores* v. *Porello* (330 U. S. 446), which decision, construing an indemnity provision, in another contract between the United States and a stevedoring concern, much like the clause to which Cardinal had agreed, held that the clause was ambiguous and might mean any one of three things. Such a clause, held the Supreme Court, might have this meaning: that a contractor (like Cardinal) was to indemnify the United States if the latter should be held liable for damages solely caused by the contractor's negligence, or, said the court, it might be that the intent was that a contractor (like Cardinal) should fully reimburse the United States for all damages caused in any part by the contractor's negligence, or, finally, the intention might have been that the contractor, in case there was joint negligence of the parties, should be responsible for that portion of the damages which the contractor's fault bore to total fault (see 330 U. S., pp. 457, 458). The Supreme Court held, therefore, in the *Porello* case, that the meaning of a clause, quite similar to the one that Cardinal signed, and on which clause alone the insurer here had disclaimed liability, was a question of fact, calling for the production of evidence. As soon as that *Porello* decision was handed down, Cardinal's attorney, in April, 1947, wrote to the Fund calling the Fund's attention to this new and controlling decision. In that letter,

he volunteered a prediction that there was little or no chance of damages being awarded against Cardinal in favor of the United States on the basis of that indemnity agreement, stating further that there was a strong likelihood that Cardinal would be held liable in the pending admiralty suits because of Cardinal's own fault, notifying the Fund that there was some disposition on the part of the libelants and the United States to negotiate a settlement of all the libels, pointing out that the actions had been called on the calendar for trial and marked "ready", and again demanding that the Fund undertake the defense of the actions, or interest itself in settlement negotiations. Under date of May 14, 1947, before the actions were actually reached for trial and before any definite settlement negotiations had been had, the Fund wrote to Cardinal's attorney a letter which is, we think, of major importance. In that letter, which was a reply to the letter (*supra*) calling the Fund's attention to the *Porello* decision, the Fund, through its general attorney, expressly offered "to accept the defense of each impleading petition", but only on the condition that in the event judgments were recovered by the United States against Cardinal, the Fund would pay on account of all such judgments, a total of not more than $25,000. This letter cannot be interpreted otherwise than as a withdrawal of the Fund's previous assertion that, because of the provisions in the policy excluding liability assumed by contract, it was not bound to defend Cardinal against the libel and petitions. Cardinal's attorney did not agree to the $25,000 limitation and, as we have said, there was no such applicable limitation in the policy. However, the Fund adhered to its position. The position, therefore, was this: the cases were up for trial and had promptly to be settled or defended, but the insurer, having previously asserted a policy exclusion and having later withdrawn that, was now offering to defend on an inapplicable condition. The insured was, in effect, left to his own devices.

There can be no doubt that the paragraph next above correctly summarizes the meaning of the correspondence between the parties. In a letter from the Fund to Cardinal's attorney in June, 1947, the Fund again stated that it would assume the defense of the actions but only up to $25,000, a limitation to which Cardinal, of course, did not agree. (Indeed, the Fund

later made it clear that it would pay $25,000, on any judgments.) Cardinal, holding the Fund's indemnity policy, was not bound to accept any such quasi-defense. Thus, the Fund, as to a major part of its obligation, had definitely breached its contract (see *Brassil* v. *Maryland Cas. Co.*, 210 N. Y. 235; *Mason-Henry Press* v. *Ætna Life Ins. Co.*, 211 N. Y. 489, 496; *Matter of Empire State Sur. Co.*, 214 N. Y. 553, 563; *Moore Constr. Co.* v. *United States Fidelity & Guar. Co.*, 293 N. Y. 119, 125; *Goldberg* v. *Lumber Mut. Cas. Ins. Co.*, 297 N. Y. 148, 154).

The actions were not reached for trial in the spring of 1947, and, during that summer and early autumn, there were negotiations between representatives of libelants and representatives of the United States and Cardinal, respectively, which finally culminated in an agreement whereby all of the libels were settled by a total payment to the libelants of $145,000, of which the United States paid 40%, and Cardinal paid 60% or $87,000. Cardinal, besides, paid his own attorney's $14,000 legal fees, or a total of $101,000, for which total amount the present suit is brought. The State Fund, while insisting that it would not defend or participate in settlements unless a $25,000 limitation was agreed to, was kept informed of the settlement negotiations, and even now approves the settlements as to fairness. It concedes, also, the reasonableness of the amount paid by Cardinal for attorney's fees.

The present suit, of course, is not one by the injured men against the United States or Cardinal, or by the United States against Cardinal. If it were, other rules of law might apply. What we have here is a suit on an insurance policy, alleging a breach by the insurer in refusing to defend, and demanding damages therefor. The applicable law, as well stated in Appleman's Insurance Law and Practice (Vol. 8, § 4690), is this: " If an insurer unjustifiably refuses to defend a suit, the insured may make a reasonable settlement or compromise of the injured person's claim, and is then entitled to reimbursement from the insurer, even though the policy purports to avoid liability for settlements made without the insurer's consent " (*Matter of Empire State Sur. Co.*, 214 N. Y. 553, 563, *supra*; *Mayor, Lane & Co.* v. *Commercial Cas. Ins. Co.*, 169 App. Div. 772; *Alliance Cas. Co.* v. *Miele*, 249 App. Div. 650). Simple justice requires such a rule. That this insurer's refusal to defend Cardinal was unjustified cannot be doubted on this record. In

offering to undertake the defense on an invalid condition (limitation of $25,000) it had finally, irrevocably, and as matter of law waived any other possible defense as to policy coverage (*Gerka* v. *Fidelity & Cas. Co.*, 251 N. Y. 51; *Kiernan* v. *Dutchess Co. Mut. Ins. Co.*, 150 N. Y. 190, 194, 195; *Clark* v. *West*, 193 N. Y. 349, 360; *Rosenwasser* v. *Globe Ind. Co.*, 224 N. Y. 561; *Moore Constr. Co.* v. *United States Fidelity & Guar. Co.*, 293 N. Y. 119, 123, *supra*, and cases cited). The asserted limitation of $25,000 was baseless, but, since the Fund would not defend except with that limitation, it, in the eyes of the law, refused to defend at all, and for no reason at all. (It is true that in a letter dated September 11, 1947, the Fund stated, without amplification, that it stood " on the position taken by it " in its letter of August 9, 1946, but this was not enough for a withdrawal of its former express waiver — see cases just above cited.) The only question, then, as it seems to us, is whether Cardinal, after being left by the insurer in that position, made a reasonable settlement of the injured men's claims. His good faith in so doing is conceded. The reasonableness of the $145,000 total figure is conceded. The question is: was Cardinal reasonably justified in paying $87,000 thereof?

Under the facts as Cardinal believed them to be, and as later established in the present suit without dispute, his workmen had been injured by escaping fumes, and the fault therefor was, at least in part, Cardinal's own fault in that his agents failed to clean out those pipes, although Cardinal had notice of their dangerous condition. Another possible fault was that of the United States in failing to follow customary practices in cleaning out the ship before turning it over to Cardinal. Under the law maritime, as experienced counsel would have found it to be at the time of the settlements, the results possible in the admiralty suits, if they went to trial, were these:

1. Cardinal and the United States might be held to be joint tort-feasors, and, under maritime law as then thought settled, this would result in Cardinal being liable over to the United States, not by contract but by substantive maritime law, for half the damages (*Erie R. R. Co.* v. *Erie Transportation Co.*, 204 U. S. 220; *The Ira M. Hedges*, 218 U. S. 264, 270; *The Wonder*, 79 F. 2d 312, 314; *Barbarino* v. *Stanhope S. S. Co.*, 151 F. 2d 553, 555 [C. A. 2d, 1945], LEARNED HAND, J.). In these very cases, two different Federal District Judges had held in

passing on Cardinal's exceptions to the pleadings, in 1946, that, despite and in addition to Federal compensation liability, Cardinal could be liable over to the United States (see *Green* v. *War Shipping Administration,* 66 F. Supp. 393; *Severn* v. *United States,* 69 F. Supp. 21).

2. Cardinal might be held to be primarily liable, that is, wholly to indemnify the United States (*Porello* v. *United States,* 153 F. 2d 605, 607, revd. in part on other grounds *sub nom. American Stevedores* v. *Porello,* 330 U. S. 446, *supra*; and see *McFall* v. *Compagnie Maritime Belge,* 304 N. Y. 314, decided herewith).

3. Cardinal might, also, be held liable to indemnify the United States on a question of fact only, since Cardinal's claim that the United States was obligated to purge the system of fumes was based not on a writing but on a custom, testimony as to which custom a trial court might reject as untrue.

4. Cardinal had by contract assumed some liability to indemnify the United States, but the meaning of the assumption clause was unsettled (see United States Supreme Court opinion in *American Stevedores* v. *Porello, supra*).

Cardinal might have been held, on trial of the admiralty causes, for half or all of such damages as might be adjudged in suits brought for $555,000 damages. Under one or more of the *Porello* case theories, such a recovery might have been on the ground: not that Cardinal had by contract promised to assume liability, but because the actual fault was wholly or partly his. It seems to us that, on this record, there is nothing to answer Cardinal's contention here that, abandoned by his insurer, he made a reasonable settlement, chargeable against the insurer as matter of law.

Several reasons are advanced for defeating a recovery here. The Court of Claims denied all recovery, and the Appellate Division modified to the extent of awarding to Cardinal his legal fees only. Since we hold that the Fund is liable to pay the settlement amount, it follows that it is liable for attorney's fees, also, and so we do not discuss the two items of the claims separately. The Court of Claims decision held, in substance, these things: first, that the New York Workmen's Compensation Law did not authorize the State Fund to insure against third-party liabilities; second, citing *Treadwell Co.* v. *United States Fidelity*

& *Guar. Co.* (275 N. Y. 158), that a policy like this does not in terms insure against third-party liabilities, and, third, that although under the *Westchester Lighting Co.* case (278 N. Y. 175), such a third-party liability runs even against an employer as to compensation-covered injuries to his employees, nevertheless, citing *American Mut. Liability Ins. Co.* v. *Matthews* (182 F. 2d 322), that sort of third-party liability does not, under maritime law, run against a third party whose direct liability by law is for workmen's compensation payments only, and who, like Cardinal, has provided for or paid such compensation benefits. The Court of Claims, therefore, concluded that the liability which Cardinal settled could have been based on a contract assumption of such liability only, that is, a liability such as was excluded from this policy. In the Appellate Division that court's opinion, again citing the *Matthews* case (*supra*), said that this settlement could have been of a contract-assumed liability only. In our court, the State relies on still another legal theory, based on the United States Supreme Court's holding in *Halcyon Lines* v. *Haenn Ship Corp.* (342 U. S. 282), which was decided on January 14, 1952, a few days after the Appellate Division's modification in the present case. The Supreme Court held (in *Halcyon Lines* v. *Haenn Ship Corp.*) substantially this: that, while substantive maritime law has usually decreed contribution as between joint tort-feasors (see *Erie R. R. Co.* v. *Erie Transportation Co.,* 204 U. S. 220, *supra; The Ira M. Hedges,* 218 U. S. 264, 270, *supra; The Wonder,* 79 F. 2d 312, 314, *supra; Barbarino* v. *Stanhope S. S. Co.,* 151 F. 2d 551, 553, *supra* [C. A. 2d, 1945], LEARNED HAND, J.; and the *Green* and *Severn* decisions in these very cases, 66 F. Supp. 393, 69 F. Supp. 21, *supra*), nevertheless, such contribution should not be enforced against an employer joint tort-feasor, where the injury was to one of his employees who was entitled to compensation under the Federal Longshoremen's and Harbor Workers' Compensation Act (U. S. Code, tit. 33, § 901 *et seq.*). As we read the cases, *Halcyon* is the first one containing an authoritative holding, at least by the highest court, that the ordinary maritime law system of contribution between joint tort-feasors was not available in such a situation (there was a holding against such contribution in the Second Circuit, in *1950,* in *American Mut. Liability Ins. Co.* v. *Matthews* [*supra*], long after the settlement here, but even then,

as the Circuit Court noted, the majority of the lower court decisions were the other way, as was, it seems, the Second Circuit's own earlier case of *Rich* v. *United States,* 177 F. 2d 688).

Thus, in our court, the State has asserted at least three different grounds for escaping liability: first, that the New York Workmen's Compensation Law does not authorize the Fund to issue a policy indemnifying against an employer's third-party liabilities; second, that even if the statute did so permit, this policy, under the *Treadwell* case (*supra*) does not cover such liabilities; and, third, that under the *Halcyon* case (*supra*), Cardinal could not, in the admiralty cases brought by the workmen, have been held liable as in tort, but only because he had covenanted to bear the burden of such third-party claims, a burden against which he was not insured, since the policy contained an exclusion applicable thereto. At the risk of making this opinion overlong, we feel it necessary to take up, separately, each of those separate positions of the State.

The State says, first, that article 6 (§ 76) of the Workmen's Compensation Law, which commands the setting up of a State bureau or " Fund " to operate as an insurer and to be known as the State Insurance Fund, did not license the Fund to insure employers against these third-party liabilities. To that contention, there are a series of answers, each answer adequate in itself. The most impressive of them is this: on November 12, 1946, before these cases were settled, and after the Fund had made and had not yet withdrawn its claim of policy noncoverage because of the assumption of liability, the State Fund in a most formal and solemn way, issued a written statement to each of its policyholders, including Cardinal, announcing that its policies, of the kind here in suit, *did* cover such third-party liabilities. That notice said in part: " The State Fund has always maintained that its employers are entitled to such indemnity protection and accordingly, our policies have always been interpreted to grant such coverage without extra charge." That notice went on to say that, to give evidence of the " State Fund's long standing practice ", there was being sent to each insured (and was so sent to Cardinal) a policy indorsement in which the State Fund agreed " TO INDEMNIFY this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such employees wherever such

injuries may be sustained including the liability imposed upon this employer by reason of a suit or claim brought against him by another to recover the amount of damages obtained from such other by an employee of the employer for injuries sustained by such employee arising out of and in the course of his employment." That could not possibly be read as anything less than a binding declaration by the insurer, as to the meaning of the policy. Whether we treat is as a construction, or admission against interest, by an insurer, or a waiver by the insurer of any right ever to take a different position, or as something creating an estoppel, makes little difference. The result, in law, of the Fund's announcement, was that it was thereafter bound to that meaning of the policy. And all that is quite apparent to those who manage the State Fund, since, on this very appeal in this very case, the State Insurance Fund, as such, has filed a separate brief (*amicus curiœ*) in which it tells us, as it told Cardinal and its numerous other policyholders in 1946, that its policies covered, and had always covered, such third-party liability. Part of the reason for that position is this: that, as long ago as 1928, the then New York State Attorney-General formally gave it as his opinion (see 1928 Atty.-Gen. 151) that the Fund did have a statutory right to insure third-party liabilities of employers, and, accordingly, the Fund later adopted a new form of policy like the one here in suit to evidence such insurance coverage. Another compelling reason for holding that the State Fund's policies do cover third-party liabilities of employers, is found in an amendment to section 76 of the Workmen's Compensation Law, passed by the Legislature some two weeks after the Court of Claims decision in this case, and approved by the Governor on March 29, 1951 (L. 1951, ch. 306). That amendment was passed, in response to an emergency message from the Governor and at the request of the State Insurance Fund, to reassure the sixty thousand (it is said) insureds who carry policies, like this one, issued by the State Fund. The whole history of that amendment, as well as its language, makes it clear that it was an interpretive and clarifying law, not one looking to the future, and that it was intended to and did state the view of the Legislature as to what the statute, and the policies, had always meant (see *Matter of Chatlos* v. *McGoldrick*, 302 N. Y. 380). All these considerations, separately and

together, confirm the view that it was always intended, and always lawful for the Fund, to cover these third-party liabilities, by means of the policy language in which the Fund agrees: " TO INDEMNIFY this employer against loss by reason of any liability imposed upon him by law for damages on account of such injuries to such employees wherever such injuries may be sustained." So much for the argument, which we reject, that the policies could not legally, and did not by intent, cover this sort of liability.

Next we come to the State's argument, based on the *Treadwell* case (*supra*). We do not find it necessary to determine the exact limits of that holding. As we have pointed out above, this insurer, when there was tendered to it the defense of these claims, and later when it was asked to settle them, waived every possible question of policy coverage except the unfounded $25,000 limitation. The matters set forth in the paragraph next above of the present opinion answer this argument of the State, also since they show that, regardless of the *Treadwell* case (the holding of which we do not further analyze) this insurer affirmatively and knowingly waived any claim that it was not bound by its policy to defend third-party claims. Beyond this, there is a technical reason (to which we do not attach major importance) why, in any event, the *Treadwell* case could not control here. It is undisputed that, when the United States impleaded Cardinal, Cardinal was, pursuant to admiralty court procedure, and by the terms of the admiralty process served on him, required to answer not only the impleading petitions but also the original libels themselves. That necessary defense as to the libels would seem to be, specifically and in terms, covered by this policy. In other words, the Fund by this policy had promised to defend against, and to pay the damages in, any suits by employees. So far as Cardinal was concerned, these were suits by employees against him.

We come now to the State's argument based on *Halcyon Lines* v. *Haenn Ship Corp.* (*supra*) decided by the nation's highest court after the present suit had been passed on by the Appellate Division. Of course, *Halcyon* v. *Haenn* would be the present law of a hypothetical case which would be up for decision now, had the United States paid the whole settlement, and were it now suing Cardinal for contribution. But there is no such suit, and no

such situation. Our problem is as to the rights, between themselves, of Cardinal and the State Insurance Fund, as of *1946* and *1947*, when the Fund breached its obligation to defend Cardinal, and waived all questions except as to the $25,000 alleged limit. The Fund, had it so chosen, could have taken on the defense of the impleading petitions, with such reservations of rights as against Cardinal, as it thought appropriate. The Fund, we suppose, could have defended against the tort count in the impleading petitions, and required Cardinal to defend himself as to any contract claim by the United States, if the Fund thought that there was any difference between the ''tort '' liability and the '' contract '' obligation. It did none of these things. It waived all claims of noncoverage, except one now shown to be invalid, and, while conceding the fairness of the settlements, refused to defend, or to join in the settlements. By so doing, it, as matter of law, breached its insurance contract and, on the concessions here, the damages for that breach could be in no sum other than the total of the settlement amount plus the lawyer's fees paid by Cardinal.

We come, next, to a matter taken up here for the sake of completeness, although perhaps not necessary to this decision. The argument from the *Halcyon* case (*supra*), is that, since Cardinal and the United States have, in the present suit, by findings of fact, been held to be joint tort-feasors, thus, it is said, there never was any right in the United States to exact contribution from its joint tort-feasor Cardinal. Of course, that is all '' after the event '' material, since when the settlements were made, there not only was no *Halcyon* case, but there was no finding, and no certainty that there ever would be a finding, that the United States and Cardinal were joint tort-feasors. Cardinal knew that he was at fault, and, presumably, the Fund knew that too, but, whether the United States was at fault was another question, since Cardinal's claim of fault against the United States rested on information, which he says he had, that the United States breached a duty and failed to follow a custom when it failed to purge the pipes, before handing the ship over to Cardinal. As we have pointed out above in one of the earlier paragraphs of this opinion, the admiralty courts, had the cases gone on to trial, might very well have held that the United States was secondarily liable only, and that Cardinal was the real

wrongdoer. Seemingly, the maritime courts, despite the *Halcyon* and *Matthews* cases (*supra*), still follow our *Westchester Lighting Co.* case (278 N. Y. 175, *supra*) rule (see *Rich* v. *United States*, 177 F. 2d 688, 691, *supra*). In any case, the Fund never, at any time in its negotiations with Cardinal, disputed with him as to whether or not he was at fault, or as to whether he was a joint tort-feasor or a primary wrongdoer, or neither. Had the Fund wished to claim that, under the *Halcyon* or some similar theory, no tort liability ran against Cardinal, it should have undertaken the defense for that purpose. Suppose the admiralty cases had gone to trial and the finding had been that the fault of the United States was merely passive, and that the fault of Cardinal was primary, principal and active. Then, it seems probable, the *Halcyon* theory would have nothing to do with the case. A recovery over in such a situation would have been of full indemnity, just as we are holding in *McFall* v. *Compagnie Maritime Belge* (304 N. Y. 314, *supra*) handed down today, and decided under our concept of the substantive maritime law governing recovery over by a shipowner, who fails to furnish a safe place to work, against an employer whose fault was subsequent and active.

So we come back to where we were when we began to discuss the various arguments for affirmance. On the clear showing of an unlawful refusal by this insurer to defend, the sole question is as to the reasonableness of the settlement thereafter made by the insurer. That question must be answered *nunc pro tunc,* not by a long-later trial, under newly handed down decisions, as to who could be held for damages, and on what theory, for the injuries to Cardinal's workmen.

We mention one more matter. We decided, in 1951, *Cardinal* v. *United States Cas. Co.* (302 N. Y. 853) wherein Cardinal tried to recover the amount of this same settlement, from an insurer which had covered him as to accidental injuries to persons other than employees of the insured. Enforcing the exclusion, in the policy there in suit, of claims for injuries to Cardinal's employees, we, agreeing with the court below, denied recovery. Broadly, the basis for our decision as to that other policy was that Cardinal had settled claims for injuries to his employees, and, on that same broad basis, this State Fund

policy should cover, since the United States Casualty Co. policy did not.

Summing up, we think that the breach by the Fund, of its policy contract, and the reasonableness of the subsequent settlement made by Cardinal, were established beyond any dispute, and accordingly, that there was no defense to this suit and that there is now no necessity for a new trial.

The order of the Appellate Division should be modified in accordance with the opinion herein, the judgment of the Court of Claims reversed, and the case remitted to the Court of Claims for entry of judgment in favor of the claimant, as demanded in the claim, with costs in all courts.

DYE, J. (dissenting). These cross appeals bring up for consideration the liability of the State Insurance Fund (hereinafter called the Fund) under a policy issued by it to insure the appellant, a ship repairer (hereinafter called Cardinal) under the New York Workmen's Compensation Law and the Federal Longshoremen's and Harbor Workers' Compensation Act. The issue turns on the construction to be given the policy provisions insuring " against loss by reason of any liability imposed upon him by law for damages on account of such injuries to such employees wherever such injuries may be sustained ", such obligations being limited, however, " to the liability imposed by law upon the employer for negligence but specifically exclude * * * any liability assumed by the employer under any contract entered into with any other person, association or organization." The policy also contained a standard form clause whereby the insurer undertook to defend " in the name and on behalf of this employer, any suits or other proceedings which might at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent ".

While the policy was in effect, Cardinal undertook to make alterations and repairs to the S.S. *Hilton,* an ocean going vessel owned by the United States and berthed at the time in New York

Harbor. During the progress of the work, a quantity of ammonia gas used in the vessel's refrigerator system was carelessly allowed to escape into the confined area in which the insured's employees were working, causing injuries to eighteen of them and death to another. The Fund thereafter paid in full the compensation awards made to the injured workmen and the death benefits made to the representative of the deceased worker. Subsequently, the same workmen and the representative of the deceased workman brought separate suits in the Federal Admiralty Court against the United States of America for damages aggregating $550,000, for personal injuries suffered by reason of the same accident. The suits were grounded in negligence for failure to provide a safe place to work. The United States of America then filed a petition to implead Cardinal as a third-party defendant and for judgment over, alleging two causes of action, one based on common-law tort liability and the other based on a contract by the terms of which Cardinal had expressly agreed to indemnify the United States against all claims made by third parties arising from the fault of Cardinal. The alleged second cause creates no difficulty here as the parties recognize that the liability thus assumed was specifically excluded from the policy coverage. Cardinal, nonetheless, demanded that the Fund undertake the defense of the impleading petitions but the Fund refused because, in its opinion, the claim was outside the terms of the policy coverage. Coincident therewith, Cardinal, through his personal attorneys, was negotiating with the United States for a settlement of the suits, the Fund being informed as to progress. By letter dated April 29, 1947, Cardinal's attorney called the attention of the Fund to the case of *American Stevedores* v. *Porello* which had imposed liability on the stevedores by virtue of an indemnity agreement issued to the United States in a case where there was mutual fault. The United States Supreme Court reversed however (330 U. S. 446), and remanded the case to the District Court for the taking of further proof on the meaning of the indemnity agreement. Cardinal's attorney thought the principle of law enunciated therein might lead to the establishment of liability on the " usual common law principles " in the case under consideration. In response to this, the Fund offered in its letter dated

May 14, 1947: " to accept the defense of each impleading peti-
tion upon the express understanding that in the event judg-
ments are recovered by the United States of America against
Cardinal Engineering Co. on the impleading petitions, the State
Insurance Fund will pay on account of all such judgments the
total sum of Twenty-Five Thousand and 00/100 ($25,000.00)
Dollars " and requested confirmation if the offer was accepted.
Cardinal, however, did not accept this offer and the Fund by
letter dated September 11, 1947, advised Cardinal that: " The
State Insurance Fund stands on the position taken by it as
outlined in   *   *   *   letter to you dated August 9, 1946." In
that letter the Fund stated that it " disclaims and disavows any
liability or responsibility whatsoever under the cross-claims in
each of the foregoing petitions," as well as " any liability or
responsibility to undertake the defense of the same and/or
the employment of counsel for that purpose."

Thereafter the suits were settled prior to trial, the United
States paying 40% of the settlement and Cardinal 60%, its
share being the sum of $87,000. Cardinal then made demand on
the Fund for reimbursement of the amount paid by him plus
his attorney's fees and disbursements in the sum of $14,000. On
the Fund's refusal the instant suit was then brought in the Court
of Claims. The Court of Claims denied all relief and entered its
judgment dismissing the complaint. The Appellate Division
modified the Court of Claims judgment to the extent of allowing
attorney's fees and both parties cross-appealed here. No
question is raised as to the reasonableness of either the sum
paid in settlement or the amount paid to the attorney.

There is no longer any doubt that the Fund may be sued in
the Court of Claims and we all agree that the policy, by its
terms, purported to insure against third-party liability, that the
Fund has statutory authority to issue such a policy, and that the
$25,000 limited liability rider is not applicable to the instant
claims.

The dispute turns on whether, under the circumstances of this
case, Cardinal as impleaded defendant was under an obligation
" imposed by law " to contribute to his joint tort-feasor; for
if he was, then the coverage of the policy was available to him
and the Fund should have reimbursed him for his contribution
to the settlement and accepted defenses of the interpleading

petition. Everyone agrees that unless there is a liability "imposed by law", he may not recover for the indemnity obligation assumed by contract is specifically excluded. When the accident giving rise to the claims occurred on January 3, 1945, it is claimed that the admiralty law was not clear as to whether contribution between joint tort-feasors in noncollision cases was governed by the moiety rule (*The North Star,* 106 U. S. 17; *The Chattahoochee,* 173 U. S. 540; *Aktieselskabet Cuzco* v. *The Sucarseco,* 294 U. S. 394) or the common-law rule (*Chapman* v. *Forbes,* 123 N. Y. 532). The Federal courts have held, however, that when the third party is an employer covered by the Longshoremen's and Harbor Workers' Compensation Act (U. S. Code, tit. 33, § 933) the liability of the employer is not the kind of wrongdoing that will be regarded as creating a common responsibility, for the act has provided an absolute duty to pay the prescribed compensation (*The Ira M. Hedges,* 218 U. S. 264). The Longshoremen's Act is also a valid defense to an asserted right of contribution (*American Mut. Liability Ins. Co.* v. *Matthews,* 182 F. 2d 322 [C. A. 2d]; see, also, *Rich* v. *United States,* 177 F. 2d 688 [C. A. 2d]).

The Fund took the position throughout, and was sustained in the courts below, that Cardinal had no liability imposed by law within the coverage of the policy. While the case was being litigated, albeit subsequent to the date of the accident giving rise to it, the United States Supreme Court settled any doubt as to contribution between joint tort-feasors in noncollision cases by holding that the common-law rule of noncontribution between joint tort-feasors is applicable (*Halcyon Lines* v. *Haenn Ship Corp.,* 342 U. S. 282). We are bound by the rule of that decision. Our practice is well settled that we take the law as we find it at the time of the appeal, whether statutory (*Matter of Kahn* [*National City Bank*], 284 N. Y. 515; *Robinson* v. *Robins Dry Dock & Repair Co.,* 238 N. Y. 271; *Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419; *Gilpin* v. *Mutual Life Ins. Co. of N. Y.,* 299 N. Y. 253), or decisional (*Graybar Elec. Co.* v. *New Amsterdam Cas. Co.,* 292 N. Y. 246). The case of *McFall* v. *Compagnie Maritime Belge* (304 N. Y. 314), handed down herewith, suggests no different result for there we dealt with the rights of a passively negligent owner and active wrongdoers, while our

present case arose out of a joint wrong by active tort-feasors, a difference which points the distinction.

It is equally clear that the Fund was under no obligation to undertake the defense of the impleading petition. Its obligation to defend depended upon whether the liability sought to be imposed was within the coverage of the policy. It has long been the rule that an insurer's duty to defend is determined by the allegations of the pleading matched against the terms of the policy. If the pleading states a cause of action within the coverage of the policy, even though the allegations " are wholly groundless, false or fraudulent " there is a duty to defend (*Mason-Henry Press* v. *Ætna Life Ins. Co.*, 211 N. Y. 489; *Goldberg* v. *Lumber Mut. Cas. Ins. Co.*, 297 N. Y. 148). The words " false " and " groundless " obviously mean false and groundless in fact. In the petition under consideration here no facts were pleaded showing a liability " imposed by law " and the State Fund was clearly justified in refusing to defend.

Furthermore, a careful reading of the correspondence passing between the parties as outlined above, clearly demonstrates that the Fund neither waived its defenses to the policy coverage nor became estopped from asserting them by reason of its offer to defend provided its liability was limited to $25,000. Patently the offer was made to compromise a disputed claim involving upwards of $550,000. In this case the parties themselves did not argue or even suggest that said offer was a waiver of the question of coverage. Moreover, even if the Fund's offer is regarded as a withdrawal of all other grounds for contesting coverage, the authorities are in accord that no estoppel results unless the assured relied thereon to his detriment (45 C. J. S., Insurance, § 707, pp. 677–678, and cases cited therein; 29 Am. Jur., Insurance, § 871, pp. 667–668, and cases cited therein). Nowhere in this record does it appear that Cardinal placed any reliance on the offer and he was not misled in any way.

The judgment of the Appellate Division should be modified by reversing so much thereof as adjudges the State Insurance Fund liable to the plaintiff in the amount of $14,000 paid by him in defense of the impleader petition.

FULD, J. (dissenting). While I agree with the court that the State Insurance Fund was under the necessity of defending the actions that had been brought in the federal court and, accordingly, defendant is liable for payment of the legal fees incurred by plaintiff in connection with their defense, I see no basis for holding defendant responsible for the amount that plaintiff paid to the United States pursuant to the agreement of settlement. The question for decision is whether the claims, settled by plaintiff's payment of $87,000 to the Government were included within the coverage of the Fund's policy of insurance and not, as Judge DESMOND puts it (opinion, p. 411), whether plaintiff was " reasonably justified " in paying that amount in settlement. The policy covered only those obligations " imposed by law ", and, since the Supreme Court of the United States has decided that there is no right to contribution between joint tort-feasors in noncollision cases (see *Halcyon Lines* v. *Haenn Ship. Corp.*, 342 U. S. 282), plaintiff was under no such obligation. In my view, therefore, it follows that plaintiff may not look to the policy for reimbursement or recovery of the amounts paid in settlement.

I would affirm the judgment of the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY and FROESSEL, JJ., concur with DESMOND, J.; DYE and FULD, JJ., dissent in separate opinions.

Judgment accordingly. [See 304 N. Y. 732, 875.]