**Leroy T. THAYER, Plaintiffs,**

v.

**DIAL INDUSTRIAL SALES, INC., Charles A. McDonnell, Fergus Fitzgerald and Jerrold B. Spiegel, Defendants.**

**No. 96 CIV. 0773(WCC).**

United States District Court,
S.D. New York.

Feb. 23, 2000.

Schwartz Simon Edelstein Celso & Kessler, Florham Park, NJ (Stephen J. Edelstein, of Counsel), for Plaintiff.

Frankfurt, Garbus, Klein & Selz, P.C., New York (Edward Hernstadt, of Counsel), for Defendants Dial Industrial Sales, Inc., Charles A. McDonnell and Jerrold B. Spiegel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

■ Plaintiff Leroy Thayer brings this action alleging that defendants Dial Industrial Sales, Inc. ("Dial"), Charles A. McDonnell, Fergus Fitzgerald, and Jerrold B. Spiegel, breached two contracts and defrauded plaintiff. Defendants Dial, McDonnell and Spiegel ("defendants")[1] now move to dismiss plaintiff's Amended Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The Complaint alleges that in or about June 1992, defendant McDonnell approached plaintiff with the idea of forming a venture for the sale of telescoping ladders. (Complt.¶ 8.) Originally, McDonnell offered plaintiff a fifty percent (50%) ownership interest in the venture. (*Id.*) McDonnell also offered plaintiff a monthly salary of $10,000, accruing from June 1992 until the first payment in February 1993. After February 1993, plaintiff was to be paid every month. (*Id.*) He was also to be paid a bonus of sixty to one hundred percent of his annual salary. Beginning in June 1992, plaintiff devoted his full time and effort to the venture, which was incorporated as Dial Industrial Sales, Inc. (*Id.* at ¶ 10.)

In or about July or August 1992, defendant McDonnell informed plaintiff that defendant Fitzgerald had a fifteen percent interest in Dial, and that McDonnell and plaintiff would each own one half of the remaining eighty-five percent interest. (*Id.* at ¶ 11.) In September 1992, McDonnell informed plaintiff of a further modification of the arrangement, specifically that McDonnell and Fitzgerald together would control the majority of shares in Dial, and plaintiff would be given a twenty-seven and one-half percent (27.5%) interest in Dial. (*Id.* at ¶ 12.)

In February 1993, plaintiff did not receive the accrued compensation originally proposed. (*Id.*) On or about April 2, 1993, plaintiff met with defendants McDonnell, Fitzgerald and Spiegel for the purpose of finalizing stock subscription and Employment Agreements. (*Id.* at ¶ 13.) At the meeting, defendants presented plaintiff with a proposed subscription agreement and a proposed Employment Agreement on a "take it or leave it" basis. (*Id.*) Plaintiff alleges that defendants told him that if he rejected the agreements he would be terminated immediately without

---

1. Counsel for defendants do not represent Fergus Fitzgerald and Fitzgerald is not included in defendants' motion to dismiss. However, counsel does argue that because plaintiff has failed to serve the Complaint on Fitzgerald, this Court should take judicial notice of plaintiff's failure to prosecute this action with respect to Fitzgerald and dismiss plaintiff's cause of action against him.

Federal Rule of Civil Procedure 4(m) states that if the complaint is not served upon a defendant within 120 days after the filing of the complaint, the court may, on its own initiative, dismiss the action without prejudice. Defendant Fitzgerald resides in and is a citizen of Ireland and the 120–day time period for service can be extended for service outside of the United States. However, because plaintiff has never attempted to serve Fitzgerald and more than six months has accrued since the Amended Complaint was filed on May 13, 1999, this Court will exercise its discretion and dismiss plaintiff's claims against Fitzgerald for failure to prosecute. *See Montalbano v. Easco Hand Tools, Inc.,* 766 F.2d 737, 740 (2d Cir.1985) (holding that Rule 4(j) [predecessor rule to 4(m)]'s exemption for service in foreign countries does not apply where service under Rule 4(i) [predecessor to Rule 4(j)] was never attempted).

compensation. Plaintiff signed both agreements on April 2, 1993.

The subscription agreement required plaintiff to pay $10,000 for 7,500 shares of Dial. Plaintiff also was listed as Vice President, Secretary and Director of the company. The share ownership of other Officers and Directors was disclosed in the subscription agreement: McDonnell owned 37,750 shares, Fitzgerald owned 29,250 shares and Leonard E. Silverman owned 7,500 shares. On or about April 2, 1993, plaintiff made the $10,000 payment and 7,500 shares were issued in the names of plaintiff and his wife as joint tenants. (*Id.* at ¶ 14.) Plaintiff's ownership of 7,500 shares represents less than a ten percent interest in Dial.

The Employment Agreement was for a three-year term beginning March 1, 1993 and fixed plaintiff's salary at one hundred and twenty thousand dollars ($120,000) per year, payable no sooner than August 1, 1993 and thereafter upon Dial's Board of Directors' determination that the corporation had adequate cash flow for that purpose. (*Id.* at ¶ 16.) The Employment Agreement also stated that plaintiff "shall report to and be under the direction of the Corporation's Chief Executive Officer and Board of Directors," (Employment Agreement ¶ 1(a)), and that plaintiff "may be entitled to a bonus in the discretion of the Corporation's Board of Directors." (Employment Agreement ¶ 3(b).)

In reference to termination, the Employment Agreement stated in relevant part:

After the first anniversary of the date hereof, the Corporation may at any time dismiss Employee on written notice to Employee and such notice shall be effective fifteen (15) days after the date of the notice. In addition to the amounts set forth in Paragraph 5(d) hereof, the Corporation shall be obligated to pay and the Employee shall be entitled to receive the following severance payments:

(a) In the event that such termination occurs prior to the second anniversary of this Agreement, the Corporation shall pay and Employee shall be entitled to receive three (3) months' salary as severance payment; and

\* \* \* \* \* \*

(c) Severance shall be payable in accordance with the Corporation's normal payroll practices and shall be subject to accrual based upon the cash flow provisions of paragraph 3(a) of this Agreement.

(d) Except for the amounts set forth in this Paragraph 6, the Corporation shall have no further liability or obligation to Employee.

(Employment Agreement ¶¶ 6(a), (c), (d).)

The Employment Agreement also stated that:

This Agreement represents the entire agreement between the parties with respect to Employee's employment with the Corporation. This Agreement may not be modified or terminated unless in writing signed by both parties hereto.

(Employment Agreement ¶ 9(b).)

Plaintiff received no salary or bonus for 1993 and received approximately $45,000 in salary for 1994 and no bonus. (Complt. ¶¶ 17, 18.)

On or about January 25, 1995, defendant McDonnell notified plaintiff orally that his employment was being terminated. A week later, on February 1, 1995, plaintiff received written notice that his employment was terminated, effective February 16, 1995. (*Id.* at ¶ 29.) The notice was in the form of a letter from McDonnell to plaintiff written on Dial letterhead. Subsequent to termination, defendants have paid plaintiff $9,333.33, including salary and severance pay. (*Id.* at ¶ 30.)

Count One of the Complaint alleges that defendants' termination of plaintiff was a breach of the Employment Agreement because plaintiff did not receive proper notice and he was terminated without ap-

proval of Dial's Board of Directors. (*Id.* at ¶ 32.) The Second Count alleges that defendants' failure to pay plaintiff's salary, bonus, and severance payments was a breach of the oral and written agreements between plaintiff and Dial. (*Id.* at ¶ 35.) The Third Count alleges a breach of the implied covenant of good faith and fair dealing in the Employment Agreement. (*Id.* at ¶ 38.) The Fourth Count of the Complaint alleges detrimental reliance. (*Id.* at ¶¶ 41–45.) The Fifth Count alleges fraud. (*Id.* at ¶¶ 45–50.) The Sixth Count of the Complaint seeks recovery under the principle of quantum meruit. (*Id.* at ¶¶ 52–54.) The Seventh Count alleges that defendant Dial was unjustly enriched. (*Id.* at ¶¶ 56–59.)

## DISCUSSION

### I. *Standard of Review*

On a motion to dismiss under Rule 12(b)(6), the issue is "whether claimant is entitled to offer evidence to support claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The Court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See id; Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re the AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y. 1993). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Ander-sen & Co.,* 72 F.3d 1085, 1088 (2d Cir. 1995).

■ In assessing the legal sufficiency of a claim, the Court may consider not only the facts alleged in the complaint, but also any document attached as an exhibit to the Complaint or incorporated by reference. *See* Fed.R.Civ.P. 10(c); *Allen v. West-Point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). The Complaint incorporates by reference the March 1, 1993 Employment Agreement between plaintiff and Dial; therefore this Court will consider the agreement in its determination of the motion to dismiss. This Court will not consider plaintiff's affidavit, which was submitted with plaintiff's opposition to the motion to dismiss and was not incorporated by reference in the Complaint.

### II. *The Oral Agreement*

Plaintiff alleges that defendants' "continuous failure to pay Leroy Thayer's salary and bonus" as required by oral agreements between plaintiff and Dial constitutes a breach thereof. (Complt.¶ 35.) Plaintiff asserts that, by devoting his full time and effort to Dial, he accepted McDonnell's offer in June 1992 of a fifty percent (50%) ownership interest in the venture together with a monthly salary of $10,000 and a bonus of sixty to hundred percent of plaintiff's annual salary. The terms of this oral agreement were later modified in conversations between McDonnell, Thayer and Fitzgerald.

■ However, the written Employment Agreement concerns the same subject matter as the alleged oral agreements. A subsequent contract concerning the same subject matter supersedes the prior contract. *See Independent Energy Corp. v. Trigen Energy Corp.,* 944 F.Supp. 1184, 1195 (S.D.N.Y.1996) (Conner, Senior J.). Even if the agreements are inconsistent or concern different subject matter, "a contract that appears complete on its face is an integrated agreement as a matter of law." *Id.* at 1196.

The Employment Agreement includes a merger clause:

> This Agreement represents the entire agreement between the parties with respect to Employee's employment with the Corporation. This Agreement may not be modified or terminated unless in writing signed by both parties hereto.

(Employment Agreement ¶ 9(b).)

■ Where the contract clearly states that it contains the entire agreement between the parties, claims based on prior understandings that contradict the plain terms of the written contract are barred. *See Village on Canon v. Bankers Trust Co.*, 920 F.Supp. 520, 528 (S.D.N.Y.1996). In *Village on Canon*, the written agreements specified that they contained the entire agreement between the parties, superseding all prior agreements, and the court refused to enforce the prior oral agreement. *Id.; see also In re Cromer*, 153 B.R. 391, 395 (Bkrtcy.E.D.N.Y.1993) ("[T]he law is well-settled that a written contract merges all prior and contemporaneous negotiations on the same subject, especially where, as here, the contract plainly states that all agreements are merged and incorporated."). Like the merger clause in *Village on Canon*, the merger clause here states that the Employment Agreement is the entire agreement between the parties regarding plaintiff's employment. Therefore, plaintiff cannot state a claim for breach of an oral agreement regarding the terms of plaintiff's employment.

### III. Breach of the Employment Agreement

In Counts One and Two of the Complaint, plaintiff alleges that defendants breached the written Employment Agreement by: (A) using improper procedures in the termination of plaintiff's employment; and (B) failing to pay plaintiff salary, bonus, and severance as required by the Employment Agreement.

### A. Termination Procedures

Plaintiff alleges that the Employment Agreement is ambiguous as to who may terminate plaintiff's employment with Dial. Specifically, plaintiff notes that the Employment Agreement states that the "employee shall report to and be under the direction of the Corporation's Chief Executive Officer and Board of Directors," but later states that "the Corporation may at any time dismiss Employee on written notice ...." (Employment Agreement ¶¶ 1(a), 6.) Plaintiff interprets these provisions of the Employment Agreement to mean that he could only be removed by the actions of Dial's Chief Executive Officer and Board of Directors. Plaintiff argues that because plaintiff was terminated by written notice from McDonnell, Dial's President, the Employment Agreement was breached.

Under New York law, the determination of whether a contract term is ambiguous is a question of law to be determined by the court. *See Independent Energy Corp.*, 944 F.Supp. at 1191. "Issues of contract interpretation are generally matters of law and therefore suitable for disposition on a motion to dismiss." *Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*, No. 98 Civ. 2570, 1999 WL 721954, at *2 (S.D.N.Y. Sept. 16, 1999).

■ A contractual provision is ambiguous as a matter of law if it is capable of "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Med. Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987) (citations omitted). In contrast, language that has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion," is unambiguous. *Hunt Ltd. v. Lifschultz Fast Freight*,

*Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989) (citations omitted).

■ The provision of the Employment Agreement that states that "Employee shall report to and be under the direction of the Corporation's Chief Executive Officer and Board of Directors," is under the subtitle *"Employment."* Further, it is preceded by the statement "The Corporation hereby employs Employee... and Employee accepts such employment." (Employment Agreement ¶ 1.) In the agreement, the "Corporation" is defined as Dial Industrial Sales, Inc. It is clear that plaintiff was under the direction of the Board of Directors regarding his employment.

However, the Employment Agreement distinguishes plaintiff's employment from his termination. In a separate paragraph of the agreement, subtitled *"Termination Without Cause,"* the agreement articulates the procedures governing plaintiff's termination. (*Id.* at ¶ 6.) This paragraph states that *"the Corporation* may at any time dismiss Employee on written notice ...." (*Id.*) (emphasis added). A reasonably intelligent person, viewing the Employment Agreement as a whole, would attribute only one meaning to the agreement. By separating the terms of the agreement regarding plaintiff's employment from those of his termination, the parties must have intended to apply different procedures to each. To interpret the agreement as applying the provisions of paragraph 1, governing plaintiff's employment, to paragraph 6, governing termination, would be to add meaning that appears inconsistent with the intent of the agreement.

Further, the Employment Agreement's statement that "the Corporation" may dismiss plaintiff is unambiguous as a matter of law. "It is black-letter law that a corporation can only act through its officers, directors and employees." *Maltz v. Union Carbide Chemicals & Plastics Co.,* 992 F.Supp. 286, 305 (S.D.N.Y.1998). Therefore, the agreement appears clearly to empower the Corporation's officers to dismiss plaintiff by written notice. That is exactly what occurred here: Dial's President, McDonnell, dismissed plaintiff through written notice. Because the Employment Agreement is unambiguous as a matter of law and defendants followed the agreement's procedures for termination, plaintiff fails to state a claim on the basis that his termination was a breach of the Employment Agreement.

**B. *Failure to Pay***

■ Plaintiff also alleges that defendants breach the Employment Agreement by their "continuous failure to pay Leroy Thayer's salary and bonus ... and to pay severance required under the Employment Agreement." (Complt.¶ 35.) Here again, the terms of the Employment Agreement are unambiguous. Under the subtitle *"Compensation,"* the agreement states:

(a) *Salary....* Notwithstanding any other provision of this Agreement, (i) Employee acknowledges and agrees that Employee's salary shall accrue, but not be payable, until the Corporation's Board of Directors determines that the Corporation has adequate cash flow to pay salaries to its executive officers and (ii) thereafter accrued salary shall be payable [sic] to Employee without interest on· a pro-rata basis together with accrued salary payable to all other executive officers of the Corporation.

(Employment Agreement ¶ 3(a).)

This provision makes clear that plaintiff's annual salary of $120,000 is not payable until Dial's Board of Directors determines that the corporation has adequate cash flow. The Complaint states that plaintiff was paid nothing in 1993 and $45,000 in 1994. Although this rate of compensation is less than plaintiff's annual salary of $120,000, the Employment Agreement unambiguously states that defendants are not required to pay plaintiff's salary unless the Board of Directors determines that the corporation has adequate cash flow. Plaintiff does not allege

that Dial had adequate cash flow and refused to pay his salary, or that defendants misstated Dial's cash flow. Therefore, defendants' failure to pay plaintiff all of his accrued salary is not a breach of the Employment Agreement.

The Employment Agreement also states that plaintiff "may be entitled to a bonus in the discretion of the Corporation's Board of Directors." (Employment Agreement ¶ 3(b).) Because this decision was committed to the discretion of the Board, defendants did not breach the Employment Agreement by failing to pay plaintiff a bonus.

Finally, the Employment Agreement states that "[s]everance shall be payable in accordance with the Corporation's normal payroll practices and shall be subject to accrual based upon the cash flow provisions of paragraph 3(a) of this Agreement." (Employment Agreement ¶ 6(c).) Under this provision, any severance payments were subject to the Corporation's determination that it had adequate cash flow. Plaintiff received $9,333.33 subsequent to termination and does not allege that defendants had adequate cash flow to pay more. Thus, plaintiff fails to state a claim for breach of contract for defendants' failure to give him severance pay upon termination of his employment.

## IV. *Implied Covenant of Good Faith and Fair Dealing*

Plaintiff also alleges, on the basis of the same facts as his breach of contract claims, that defendant Dial breached the implied covenant of good faith and fair dealing in the Employment Agreement. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992). Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is therefore dismissed as duplicative of plaintiff's breach of contract claims. *See Na-*

*tional Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, 922 F.Supp. 849, 855 (S.D.N.Y.1996); *see also Pilarczyk v. Morrison Knudsen Corp.*, 965 F.Supp. 311, 322 (N.D.N.Y.1997) (dismissing breach of contract and breach of implied covenant of good faith and fair dealing).

## V. *Detrimental Reliance*

Plaintiff brings a claim for detrimental reliance on the basis that defendants made representations regarding plaintiff's prospective ownership interest in Dial and his compensation as an employee of Dial. Plaintiff alleges that in reliance on these representations, he went to work full time for Dial, expending considerable time and effort.

Under New York law, a claim for detrimental reliance is analyzed as a claim of promissory estoppel where the claim has its basis in an unenforceable oral agreement. *See P.A. Bergner & Co. v. Martinez*, 823 F.Supp. 151, 160 (S.D.N.Y. 1993). Under promissory estoppel, reliance upon a promise becomes grounds for recovery. *See id.* To state a claim of promissory estoppel, plaintiff must show: "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reasons of his reliance." *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir.1989) (*quoting Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2d Cir.1986)).

When he was first approached by McDonnell to join the Dial venture, plaintiff was promised a fifty percent share in the ownership of Dial. Later, McDonnell was joined by Fitzgerald in promising a twenty-seven and one-half percent ownership interest in Dial. Plaintiff also was promised $120,000 per year in salary and a bonus. Plaintiff alleges that in reliance on these promises, he expended his full time

and effort on behalf of Dial, and later suffered financial injury and emotional distress when defendants reneged upon these promises. However, plaintiff signed a subscription agreement in April 1993 that required plaintiff to pay $10,000 for 7,500 shares of Dial. He also signed the Employment Agreement that limited his potential bonus to the Board of Directors' discretion and tied the payment of his salary to Dial's cash flow.

▮ Although they did not result in a binding contract, the oral representations of the parties can be considered by the Court in analyzing plaintiff's detrimental reliance claim. "A general merger clause cannot serve to exclude parol evidence of [fraud in the inducement]." *Marine Midland Bank N.A. v. Walsh,* 260 A.D.2d 990, 689 N.Y.S.2d 288, 289 (N.Y.App.Div.1999). Here, the merger clause in the Employment Agreement did not specifically disclaim any reliance on oral representations, but stated only that it was the entire agreement between the parties. Therefore the merger clause was too general to serve to exclude parole evidence of plaintiff's reliance.

▮ However, the oral representations upon which plaintiff relied directly contradict both the subscription agreement and the Employment Agreement. For example, plaintiff alleges that he relied on defendants' representations that he would receive a fifty percent, and then a twenty-seven and one-half percent share in ownership of Dial. These representations were inconsistent with the subscription agreement, which required plaintiff to pay $10,000 for 7,500 shares of Dial, or less than a ten percent interest. The representations relied upon are also inconsistent with the Employment Agreement in that plaintiff asserts that he was told that he would receive a bonus of sixty to one hundred percent of his salary, whereas the Employment Agreement states that a bonus is in the discretion of the Board of Directors.

Under New York law, "reasonable reliance is precluded when an express provision in a written contract contradicts a prior alleged representation in a meaningful fashion." *M.H. Segan L.P. v. Hasbro, Inc.,* 924 F.Supp. 512, 527 (S.D.N.Y.1996); *Republic National Bank v. Hales,* 75 F.Supp.2d 300, 315 (S.D.N.Y.1999). Because the representations upon which plaintiff allegedly relied to his detriment are contrary to the terms of the subscription agreement and the Employment Agreement, plaintiff is precluded from arguing that he reasonably relied upon those representations after signing the written agreements.

▮ However, plaintiff's allegations are sufficient to state a claim for detrimental reliance for the time period between June 1992, when he commenced work for Dial, and March 1, 1993, when he signed the written employment and subscription agreements. Taking the facts in the Complaint as true, defendants made a clear promise to plaintiff that he would receive salary and a significant ownership interest in Dial. In reliance on this promise, plaintiff devoted his full time and effort to Dial. Plaintiff also alleges that he suffered financial injury because he has not received the compensation promised to him. Thus, plaintiff has adequately alleged a claim for detrimental reliance for the time period prior to his signing of the written agreements. Defendants' motion to dismiss Count Four is denied. However, the jury will be limited to finding damages for the time period of June 1992 through March 1, 1993.

**VI. *Fraud***

▮ On the basis of the same oral representations, plaintiff also brings a fraud claim. To state a claim for fraud under New York law, plaintiff must allege that defendants: "(1) made an omission, misrepresentation, or false statement of material fact; (2) with knowledge of its falsity; (3) with the intent to defraud; (4) upon which the plaintiff reasonably relied;

and (5) which caused damages to the plaintiff due to plaintiff's reliance thereon." *Lomaglio Assocs. Inc. v. LBK Marketing Corp.,* 892 F.Supp. 89, 94 (S.D.N.Y.1995).

Again, plaintiff could not have reasonably relied upon defendants' oral representations after he signed the subscription and Employment Agreements because the oral representations were contradicted by the written agreements. *See M.H. Segan L.P.,* 924 F.Supp. at 527; *Republic National Bank,* 75 F.Supp.2d at 315. However, plaintiff has stated a claim for fraud for the time period between June 1992 and March 1, 1993. Plaintiff alleges that defendants "intentionally and knowingly made materially false representations with the intent to defraud him regarding his prospective ownership interest in Dial and his compensation as an employee of Dial." (Complt.¶ 47.) These representations include defendants' original promise that plaintiff would receive a fifty percent (50%) interest in Dial and defendants' subsequent promise that plaintiff would receive a twenty-seven and one-half percent (27.5%) interest in Dial. Plaintiff relied upon those promises and devoted his full time and effort to Dial. As a result, plaintiff alleges that he suffered and will suffer financial losses.

 Plaintiff's Complaint also meets the pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." The Complaint must: "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993). Although Rule 9(b) also states that "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally," plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995). A strong

inference of fraud may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).

 Plaintiff has adequately alleged specific misrepresentations made by defendants and has provided details regarding where and when the statements were made. "A party's failure to fulfill a promise to perform future acts cannot form the basis of a fraud claim, unless that party intended not to fulfill that promise at the time when it was made." *Lomaglio Assocs.,* 892 F.Supp. at 94. Plaintiff has alleged that defendants made these misrepresentations regarding his compensation and ownership interest in Dial in order to induce plaintiff to work for Dial while knowing that defendants did not intend to fulfill their promises. Plaintiff also alleges that defendants presented the employment and subscription agreements on a "take it or leave it" basis. These facts give rise to an inference of fraudulent intent. Therefore, defendants' motion to dismiss Count Five is denied. However, because plaintiff could not reasonably rely on defendants' oral representations once he signed the employment and subscription agreements, the jury will be limited to finding damages for the time period of June 1992 through March 1, 1993.

## VII. *Quantum Meruit*

Plaintiff brings a claim for quantum meruit, alleging that he "performed services in good faith for Dial at defendants' request with the expectation that he would be compensated at a rate of ten thousand ($10,000) dollars per month, plus benefits and bonus," and that compensation was due and owing through January of 1995. (Complt.¶¶ 52–53.)

 In order to state a claim for quantum meruit, plaintiff must establish: "(1) performance of services in good faith; (2) the acceptance of the services by the

person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services." *Moors v. Hall*, 143 A.D.2d 336, 337, 532 N.Y.S.2d 412 (1988). Although "a contract cannot be implied in fact when there is an express contract covering the subject matter involved," *GSGSB, Inc. v. New York Yankees*, 862 F.Supp. 1160, 1170 n. 8 (S.D.N.Y.1994) (internal citations omitted), from the time plaintiff commenced work in June 1992 until he signed the Employment Agreement in April 1993, there was no express contract covering plaintiff's compensation. Thus although plaintiff cannot state a claim for quantum meruit for performance of services after he signed the Employment Agreement, he may have a cause of action for the time period running from June 1992, when he started working for Dial, through March 1, 1993, when the Employment Agreement went into effect.

As discussed above, plaintiff has failed to state a claim for breach of contract on the basis of defendants' oral representations to plaintiff prior to his signing the Employment Agreement because the merger clause stated that the written Employment Agreement was the "entire agreement" between the parties. Even though plaintiff cannot recover contractual damages for the time period between June 1992 and March 1, 1993, he has adequately stated an equitable claim for recovery under quantum meruit. Taking the facts in the Complaint as true for the purposes of this motion, plaintiff devoted his full time and effort to Dial beginning in June 1992. Defendants accepted those services. Whether plaintiff had a reasonable expectation of receiving compensation is an issue of fact for the jury. *See id.* Therefore, defendants' motion to dismiss Count Six of the Complaint is denied. However, the jury will be limited to finding damages for the time period prior to the signature of the Employment Agreement, June 1992 through March 1, 1993.

## VIII. *Unjust Enrichment*

 Count Seven of the Complaint brings a claim for unjust enrichment on the same basis as the quantum meruit claim. Under New York law, to state a claim for unjust enrichment plaintiff must show that "(1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make restitution." *Independent Energy Corp.*, 944 F.Supp. at 1200.

 Plaintiff's allegations that defendants were enriched at his expense are adequate to withstand a motion to dismiss. Taking the facts in the Complaint as true, defendants had the benefit of plaintiff's services from June 1992 until March 1, 1993, and plaintiff was not compensated at all for those services. At the time plaintiff began working for Dial, he believed that he would have a fifty percent interest in the venture and would be paid his accrued salary in February 1993. Although later he signed a fully integrated written Employment Agreement that tied the payment of his salary to cash flow and a subscription agreement that limited his ownership of Dial, for the time period between June 1992 and March 1, 1993, plaintiff worked with the belief that he would be paid accrued salary in February 1993, would be paid monthly from that time on, and would have a substantial ownership interest in Dial. Therefore, plaintiff has stated a claim for unjust enrichment and defendants' motion to dismiss Count Seven is denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted as to Counts One through Three, and denied as to Counts Four through Seven. Plaintiff's claims against defendant Fitzgerald are dismissed without prejudice for failure to prosecute. The Clerk of the Court shall enter judgment for defendant Fitzgerald. SO ORDERED.